Tonda Sue Watkins, appellee, v.
Matt Daniel Watkins, appellant.
___ N.W.2d ___

Filed April 19, 2013.    No. S-12-167.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.

4. **Child Custody.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.

5. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

6. **Statutes: Legislature: Intent: Appeal and Error.** In discerning the meaning of a statute, an appellate court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

7. **Statutes.** If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.

8. **Child Custody: Convicted Sex Offender: Modification of Decree.** Pursuant to the plain language of Neb. Rev. Stat. § 43-2933(1)(b) and (3) (Reissue 2008), when a person involved in a custody dispute is residing with someone who is required to register as a sex offender under the Sex Offender Registration Act as a result of a felony conviction in which the victim was a minor or as a result of an offense that would make it contrary to the best interests of the child if the person had custody, such cohabitation development shall be deemed a change in circumstances sufficient to modify a previous custody order, unless the trial court finds that there is no significant risk to the child and states its reasons in writing or on the record.

9. **Pleadings: Due Process.** A court's determination of questions raised by the facts, but not presented in the pleadings, should not come at the expense of due process.

Appeal from the District Court for Otoe County: Randall L. Rehmeier, Judge. Affirmed.

Julie E. Bear, of Reinsch, Slattery, Bear & Minahan, P.C., L.L.O., for appellant.

Mindy Rush Chipman, of Rush Chipman Law Office, P.C., L.L.O., guardian ad litem.

No appearance for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

Per Curiam.

## NATURE OF CASE

Tonda Sue Watkins and Matt Daniel Watkins were divorced in March 2005. According to the decree of dissolution of their marriage, Tonda and Matt were awarded joint legal and physical custody of their minor children, Brittni Watkins and Cristian Watkins. Pursuant to the decree, the children reside with Tonda for one-half of each week and with Matt for one-half of each week. In June 2011, Matt filed an amended complaint to modify the decree, seeking full custody of the children. After a bench trial, the district court filed an order in which it found in favor of Tonda and against Matt, declined to modify the parenting plan, and dismissed the complaint.

Matt appeals, claiming that the district court erred when it denied his request to modify custody. Because we do not find error, we affirm the district court's denial of Matt's request for modification of custody.

The attorney for the minor children claims in her appellate brief that the district court erred when it determined that the issue of modifying the parenting plan was not before it. Because the district court did not err in this ruling, we affirm.

## STATEMENT OF FACTS

Tonda and Matt were married on February 25, 1996. They have three children together: Ashley Watkins, born in August 1992; Brittni, born in October 1999; and Cristian, born in August 2001. Tonda and Matt were divorced in 2005. The decree of dissolution of marriage awarded joint legal and physical custody of the children to Tonda and Matt;

it further provided that Tonda and Matt are to have equal time with the children. The decree did not award child support to either Tonda or Matt. Since the entry of the decree, Ashley has become emancipated, and therefore is not legally affected by this case. Generally, Brittni and Cristian reside Sunday morning through Wednesday evening with Tonda and Wednesday evening through Sunday morning with Matt. This case involves Matt's attempt to modify the decree so that Matt has full custody of Brittni and Cristian. After a bench trial, the district court denied Matt's request to modify the custody arrangement set forth in the decree and dismissed the complaint for modification.

This case is somewhat complicated by the intertwining relationships of the persons involved. Tonda is in a relationship and residing with Corey Neumeister. At the time of trial, Tonda and Corey had been living together for approximately 1½ years. Matt is residing with his wife, Victoria Watkins, formerly Victoria Neumeister. At the time of trial, Matt and Victoria had been married for approximately 1½ years, and they have one child together, Braydon Watkins, who was 4 years old at the time of trial. Victoria was previously married to Corey, but they are now divorced. While they were married, Victoria and Corey had two children together: Joss Neumeister, who was 7 years old at the time of trial, and Conner Neumeister, who was 5 years old at the time of trial. Corey is also the father of Clayton Neumeister, who was 10 years old at the time of trial.

Matt lives in a house near Nebraska City, Nebraska, with Victoria, Joss, Conner, and Braydon, and with Brittni and Cristian from Wednesday evening to Sunday morning. Tonda lives in a house in the Nebraska City area with Corey, and with Brittni and Cristian from Sunday morning through Wednesday evening. Joss and Conner visit Tonda and Corey's house on Tuesdays and Thursdays and every other weekend. Clayton was living with Tonda and Corey at the beginning of the modification proceedings in this case; however, at the time of trial, Clayton was living with his maternal grandparents in Plattsmouth, Nebraska. There was considerable testimony regarding Clayton's behavioral issues.

On June 1, 2011, Matt filed an amended complaint to modify the decree of dissolution of Tonda and Matt's marriage, seeking full custody of Brittni and Cristian. Matt alleged that since the decree was entered, a material change occurred affecting the welfare and best interests of Brittni and Cristian in three respects: (1) Tonda was cohabitating with Corey, a registered sex offender; (2) Corey's son Clayton was under the jurisdiction of the juvenile system and posed a threat to the other members of the household, including Brittni and Cristian; and (3) Tonda had been evicted from various residences and was unable to provide the necessary level of stability for Brittni and Cristian to remain in her custody. Tonda denied these allegations in her answer to the amended complaint to modify. Tonda had also filed a cross-complaint which was later dismissed.

On June 27, 2011, the district court filed an order granting temporary relief in response to Matt's amended complaint requesting temporary relief. The court ordered that Corey's son Clayton shall not be present during any parenting time exercised by Tonda with Brittni and Cristian. The court overruled Matt's request that Corey not be present during Tonda's parenting time; the court found "no significant risk involving Brittni and Cristian residing in the same household with [Corey]."

A 2-day bench trial was held on November 30, 2011, and January 20, 2012, where testimony was heard and evidence was offered and received. After trial, the district court filed an order on February 6, described in greater detail in our analysis. The court found in favor of Tonda and against Matt on the issue of Matt's seeking full custody of Brittni and Cristian and dismissed the complaint. The court also found in favor of Tonda and against Matt with respect to restrictions on Corey's and Clayton's contact with Brittni and Cristian, and ordered that the current restrictions are to apply until further order of the court upon modification proceedings.

With respect to Corey, the court recognized in its order that Corey is a registered sex offender and that Neb. Rev. Stat. § 43-2933(1)(b) (Reissue 2008) provides:

No person shall be granted custody of, or unsupervised parenting time, visitation, or other access with, a child if anyone residing in the person's household is required to register as a sex offender under the Sex Offender Registration Act as a result of a felony conviction in which the victim was a minor or for an offense that would make it contrary to the best interests of the child for such access unless the court finds that there is no significant risk to the child and states its reasons in writing or on the record.

The district court followed this statute, stated extensive reasons in writing as to why there was not a significant risk to Brittni and Cristian, and concluded that

based on the evidence for the reasons herein stated, it does not appear that there is a significant risk involving either Brittni . . . or Cristian . . . to be in the same household with [Corey], provided, as agreed to by [Tonda], that there be no unsupervised contact between Brittni . . . or Cristian . . . and [Corey].

With respect to Clayton, the court determined that it appears that Clayton does present some level of risk to Brittni and Cristian. However, the court recognized that Clayton no longer resides with Tonda and Corey. The court found,

based upon the concerns and apparent risk[,] that there should be no contact between Brittni . . . and Cristian . . . and Clayton . . . at this time. In the event that [Tonda] continues to reside with [Corey] and/or they get married, if at some point it is the intention to have Clayton return home, a modification order will be necessary to modify this no-contact provision.

The court further determined in its order that the issue of changing the parenting plan, from splitting the week between Tonda and Matt to a week-to-week schedule, was not properly before it. The court noted that Matt clearly testified that if the court determined that Matt was not awarded sole custody, he was not requesting and did not want the current parenting time to be modified or changed. The court further stated that Tonda was not requesting any such relief through

a pending counter-complaint. Accordingly, the court did not address changing the parenting time schedule.

The court awarded attorney fees to the attorney representing Brittni and Cristian, with Tonda and Matt each being responsible for half of said fees. Tonda and Matt were ordered to pay their own attorney fees.

## ASSIGNMENTS OF ERROR

Matt appeals and claims generally that the district court erred when it denied his amended complaint to modify custody and dismissed his complaint.

The attorney for the minor children contends in her appellate brief that the district court erred when it found that the issue of modifying the parenting plan and the parenting time schedule was not properly before it.

## STANDARD OF REVIEW

[1,2] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. See *Latham v. Schwerdtfeger*, 282 Neb. 121, 802 N.W.2d 66 (2011). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Davis v. Davis*, 275 Neb. 944, 750 N.W.2d 696 (2008).

[3] Statutory interpretation presents a question of law, which we review independently of the lower court's determination. *Jeremiah J. v. Dakota D.*, 285 Neb. 211, 826 N.W.2d 242 (2013).

## ANALYSIS

*The District Court Did Not Err When*
*It Denied Custody Modification.*

The decree awarded joint legal and physical custody of Brittni and Cristian to Tonda and Matt. Matt claims for a variety of reasons that the district court erred when it denied his amended complaint to modify in which he sought full custody. Relying on § 43-2933(1)(b) and (3), Matt primarily

argues that Tonda's cohabitation with Corey, a registered sex offender, warrants a modification of custody. We determine that the district court did not err when it determined that there is no significant risk to the children and denied modification of custody on this basis. Matt also contends that custody of Brittni and Cristian should have been modified due to (1) the presence of Clayton in Tonda's home and (2) Tonda's failure to maintain a stable residence. We find no merit to these assignments of error.

[4] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Latham v. Schwerdtfeger, supra*. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). These principles apply to the issues involving Clayton and the stability of Tonda's home. However, Matt's assignment of error based on the fact of Corey's presence in Tonda's home as grounds for modification must also be analyzed under the statutory framework found in § 43-2933 relating to a sex offender residing in the home.

In June 2011, Matt filed an amended complaint to modify custody, primarily because Tonda is cohabitating with Corey, who is a registered sex offender. Matt contends that pursuant to § 43-2933, Tonda should not have custody of Brittni and Cristian and, instead, he should have full custody of the children.

Section 43-2933(1)(b) provides:

No person shall be granted custody of, or unsupervised parenting time, visitation, or other access with, a child if anyone residing in the person's household is required to register as a sex offender under the Sex Offender Registration Act as a result of a felony conviction in which the victim was a minor or for an offense that would make it contrary to the best interests of the child for such access unless the court finds that there is no significant

risk to the child and states its reasons in writing or on the record.

Section 43-2933(3) provides that "[a] change in circumstances relating to [the above-quoted] section is sufficient grounds for modification of a previous order."

[5-7] We have not previously interpreted § 43-2933. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013). In discerning the meaning of a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Id*. If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *Bridgeport Ethanol v. Nebraska Dept. of Rev.*, 284 Neb. 291, 818 N.W.2d 600 (2012).

[8] Pursuant to the plain language of § 43-2933(1)(b) and (3), when a person involved in a custody dispute is residing with someone who is required to register as a sex offender under the Sex Offender Registration Act as a result of a felony conviction in which the victim was a minor or as a result of an offense that would make it contrary to the best interests of the child if the person had custody, such cohabitation development shall be deemed a change in circumstances sufficient to modify a previous custody order, unless the court finds that there is no significant risk to the child and states its reasons in writing or on the record. Thus, in applying § 43-2933, a district court must first determine whether there is an individual residing in the household who is required to register under the Sex Offender Registration Act and, if so, whether the offense triggering the registration requirement is due to a felony conviction in which the victim was a minor, whether the offense triggering the registration would make it contrary to the best interests of the child whose custody is at issue, or whether the offense does not meet either of these two descriptions. If the district court finds the offense to be a felony involving a minor victim or an offense contrary to the best interests of the

child, § 43-2933(1)(b), there is a statutorily deemed change of circumstances, § 43-2933(3), and custody shall not be granted to the person who resides with the sex offender unless there is a finding by the district court that the circumstances present no significant risk. In sum, taken together, § 43-2933(1)(b) and (3) create a statutory presumption against custody being awarded to the person residing with a sex offender who committed the described offenses, but the presumption can be overcome by evidence. The foregoing analysis applies to this case, and the district court followed this framework.

In this case, the evidence shows that subsequent to the decree, Tonda resided with Corey, a registered sex offender. At the time of trial, Tonda had resided with Corey for approximately 1½ years and Corey was in his ninth year of a 15-year registration. The record shows that the offense triggering registration was based on Corey's having pleaded guilty to the misdemeanor of attempted rape of a 14-year-old girl when he was 21 years old. Corey's requirement that he register as a sex offender is not the result of a felony conviction in which the victim was a minor; however, in its order, the district court implicitly found that Corey is required to register as a sex offender because of an offense that would make it contrary to the best interests of the children if Tonda was allowed custody of, visitation with, or other access to the children. We find no error with respect to this finding. Because Matt established that Tonda resided with a sex offender, the statute provides that a change of circumstances sufficient for modification has occurred, and it is presumed under the statute that Tonda may not have custody, unsupervised parenting time, visitation, or other access to Brittni and Cristian. As we have noted, this presumption can be overcome if the district court finds, based on the evidence, that there is no significant risk to the children and states its reasons in writing or on the record, § 43-2933(1)(b). In this case, the district court did so find and stated its reasons in writing.

The district court stated in its order that there was no evidence that Corey had any incidents involving inappropriate sexual contact other than the offense that occurred approximately 10 years prior that resulted in Corey's being required to

register as a sex offender. The court also stated in its order that Victoria, who was previously married to Corey, was aware of Corey's conviction prior to their marriage. The court noted that Victoria and Corey had two children together and that Corey has visitation with those children.

The district court noted the parties' oldest child, Ashley, who was emancipated at the time of trial, testified that when she lived with Tonda and Corey, she did not have any issues or problems with Corey, and that Corey had made no inappropriate advances toward her. Ashley testified that she had no concerns about Corey. The district court noted Brittni testified that she generally likes Corey and that Corey has not done or suggested anything inappropriate to her. The district court noted that Tonda testified that she has not witnessed any inappropriate contact or language between Corey and Brittni or Cristian. The district court noted Tonda testified that she had not allowed unsupervised contact between Corey and the children and that she would not allow unsupervised contact in the future.

Based on these facts, the district court found that there is not a significant risk involving Brittni or Cristian being in the same household as Corey, and ordered that there continue to be no unsupervised contact between Brittni or Cristian and Corey. Thus, although there is a statutory presumption that Tonda would not have custody, unsupervised parenting time, visitation, or other access to Brittni and Cristian due to Corey's presence in Tonda's household, the district court provided sufficient reasons supported by the record that Brittni and Cristian were not at significant risk and that the best interests of Brittni and Cristian did not require modification. We believe that the district court made a thorough and careful evaluation of the evidence and did not abuse its discretion in reaching its conclusion. Upon our de novo review, we determine that the district court did not err when it denied Matt's request for a modification of custody on this basis.

Matt also asserts that Corey's son Clayton would pose a risk to Brittni and Cristian if Clayton returned to reside in Tonda and Corey's home and that the district court erred when

it denied his request for modification on this basis. When the modification proceedings began, Clayton was residing in Tonda and Corey's home. However, at the time of trial, Clayton was a ward of the state and had been removed from Tonda and Corey's home.

In its ruling, the district court determined that there was a potential risk posed by Clayton to Brittni and Cristian, and ordered that there should be no contact between Clayton and Brittni or Cristian. The district court further ordered that if Tonda and Corey intend to have Clayton live in their home in the future, a modification proceeding should be filed because an order would be necessary to modify this no-contact provision. Based on the fact that Clayton is not currently residing with Tonda and Corey, there has not been a material change in circumstances warranting modification of custody, and the district court did not err when it denied Matt's request for modification on this basis.

Matt further argues that he should have full custody of Brittni and Cristian because Tonda is unable to provide them with the proper level of stability. Matt points to the fact that Tonda has changed residences eight times since Tonda and Matt were divorced in 2005 and that several of her changes in residence were the result of eviction proceedings. The record indicates that Tonda had failed to pay rent and failed to properly maintain some of the rental properties in which she resided.

With regard to the level of stability Tonda can provide to the children, the district court stated that although the evidence creates some concern, it is not sufficient to establish a material change of circumstances warranting a change of custody. Upon our de novo review of the record, we determine that the district court did not abuse its discretion in making this determination and denying a change of custody on this basis.

Having considered the record and the bases asserted by Matt to support his request to change from joint to full custody in his favor, we cannot say that the district court erred when it denied the request and dismissed Matt's complaint to modify custody.

*The Issue of Modifying the Parenting
Plan Was Not Properly Before
the District Court.*

The attorney for the children contends in her appellate brief that the district court erred when it determined that modification of the parenting plan was not before it. The attorney for the children contends that she had standing to assert this error based on various rationales, including Neb. Rev. Stat. § 42-358(6) (Reissue 2008), which provides that "[a]ny person aggrieved by a determination of the court may appeal such decision . . . ." Because the substance of the error asserted by the attorney for the children is wholly without merit, we need not resolve the standing issue.

Neb. Rev. Stat. § 42-364(6) (Cum. Supp. 2012) pertains to modifications of parenting plans and requires that "[p]roceedings to modify a parenting plan shall be commenced by filing a complaint to modify" and states that such actions are governed by the Parenting Act. In this case, no complaint to modify the parenting plan was filed, and therefore, the issue of modifying the parenting plan was not properly raised before the district court.

For completeness, we note that Matt testified that if the custody issue he raised was not determined in his favor, he did not want the parenting plan to be modified. In his appellate brief, Matt asserts that he was not given notice, that he was not prepared to resist modification of the parenting plan at the hearing, and that if he had been made aware that the issue would be considered by the court, he may have presented additional evidence.

[9] This situation bears a similarity to *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). In *Zahl*, we held in the context of a marital dissolution action, that due process was violated when the trial court sua sponte awarded joint custody when neither of the parties had requested joint custody and did not have notice that joint custody would be an issue before the court. See, also, *State ex rel. Amanda M. v. Justin T.*, 279 Neb. 273, 777 N.W.2d 565 (2010) (extending holding in *Zahl* to paternity case where neither party requested joint custody). In *Zahl*, we stated that a "court's determination of questions

raised by the facts, but not presented in the pleadings, should not come at the expense of due process." 273 Neb. at 1053, 736 N.W.2d at 373.

In the present case, the amended complaint filed by Matt sought to modify custody and to award full custody to him. Although Brittni and Cristian expressed a preference during the custody hearing for a schedule in which they would stay with their parents by alternating 1 week at a time, no complaint to modify the parenting plan to this or other effect was filed. See § 42-364(6). The district court correctly observed that the issue of modifying the parenting plan was not properly before it.

## CONCLUSION

The district court did not err when it denied Matt's amended complaint to modify custody, in which he sought full custody of the children. Furthermore, the district court did not err when it observed that the issue of modifying the parenting plan was not properly before it. Thus, we affirm.

AFFIRMED.

MILLER-LERMAN, J., participating on briefs.

---

LOZIER CORPORATION, APPELLANT, v. DOUGLAS COUNTY
BOARD OF EQUALIZATION, APPELLEE.
___ N.W.2d ___

Filed April 19, 2013.    Nos. S-12-322 through S-12-324.

1. **Taxation: Judgments: Appeal and Error.** An appellate court reviews decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.
3. **Taxation: Appeal and Error.** An appellate court reviews questions of law arising during appellate review of decisions by the Tax Equalization and Review Commission de novo on the record.
4. **Taxation: Statutes.** The plain language of Neb. Rev. Stat. § 77-5013(2) (Cum. Supp. 2012) focuses on whether a mailing is properly placed in the mail, rather than on whether the Tax Equalization and Review Commission receives it.